Good morning. Donna Gray on behalf of James Shamblin, the Defendant Appellant, if it please the Court. Mr. Shamblin is asking this Court to reverse his conviction in this case back for a new trial based upon extrinsic evidence that was received by the jury and not discovered until the jury had deliberated at least half a day. The government argues in its response, its answering brief to this Court, that this list of evidence that was not admitted into evidence, one of which was the description of a bail receipt, was cumulative of other evidence in the case, specifically that the defendant had a prior conviction, a fact that he stipulated to in a felon in possession case. I would argue that it is not cumulative of the fact of his prior conviction. His prior conviction in the stipulation given to the jury was a 1992 conviction. This bail receipt is dated December 11, 2001. And it's December 11, 2001 was the date on which Ululani Wallace testified that she had a receipt in her possession for James Shamblin. But Counsel, what about the curative instruction? Even if we agree with you that the bail receipt was injurious to your client's interest, why did the curative instruction carry any harm? Well, Your Honor, I think that you can compare a curative construction in context to the type of curative instruction that would be given if a felony conviction otherwise unknown to the jury came to light through extrinsic evidence during jury deliberations. And that is that, and this Court has commented in several cases, is that it is often very ineffective to give such an instruction when you're talking about a prior conviction. Why was it ineffective in this case? Because, Your Honor, it went to a matter involving a bail receipt. But the bail receipt didn't have anyone's name on it. No details. That is true, Your Honor, but it had the date of the – that was connected to the testimony of Ululani Wallace. It had a wrong date on it. It had a wrong year. It had the same day and month. But she testified that she had a receipt that she had for James Shamblin on that date. But she didn't say what it was for. She had taken care of something for him. Right. And the connection is much – very easily made by anyone that when it says bail receipt, that that's what she did. She made a payment for him for bail. But the Court said there is no bail receipt in this case. And given the curative instruction, the Court made it clear that there was no bail receipt in this case. And if the bail receipt is not in evidence, it's because it has nothing to do with this case. What else could the Court have said? That's the whole point, Your Honor. What else could the Court have said? The Court can't take back the fact that the jury now knows that on December 11th, during the time that he's accused of essentially stealing this truck, which is an inference that they were asked to draw by the government, that he was on bail for a criminal offense. It is common knowledge what the word bail means. And I think that – As you're arguing, what do we have to conclude? We have to conclude as a matter of law that the jury did not follow the trial court's instruction, the jury's instruction, don't we? Yes, Your Honor, you do. And I think you can do that based upon what is prior precedent, and that is the effectiveness of such instructions when it goes to an issue like a prior conviction or someone on bail for a criminal offense is inefficacious. What case are you relying upon to support your argument that this type of instruction didn't cure the harm in this case? What's your best case authority for that proposition? Well, Your Honor, I think I was looking at some of the language in Dixon versus Sullivan itself. Okay. That's your best case, you think, to support your argument? Yes, Your Honor. Your Honor, the other issue is raised by the government that was a companion to their cumulative argument is that the evidence was otherwise admissible, and I would argue that it was not. It was highly prejudicial and not relevant in any way to the issues in the case. The second issue raised by Mr. Shamblin in his – specifically the language in Dixon you're relying upon to support your argument that the curative instruction was inadequate in this case. Your Honor, on – in Dixon, on page 407, the Court goes to that through a number of cases, citing a number of cases in which reversals were had. The first one it cites is the United States versus Lewis. So in essence, it depends on the facts of the case. Yes, Your Honor. That's what Dixon is telling us. And in Dixon, a deputy had given a statement to the jury. That's correct. So we had a much different circumstance than we have here. So I think the lesson from Dixon is we look at the individual case and the totality of the record. Would you agree with that? Yes, I would, Your Honor. And I think if you're looking at that in this case, the totality of the record, that especially in a case like this where not only is the defendant already have the fact before the court of his prior conviction, there is now through extrinsic evidence the fact that during the time that he's accused of committing this very offense, he is on bail for some other offense. And it's highly prejudicial. I don't think for a minute any juror could ignore that even given the admittedly strong admonition given to the jury by the district court judge. Your Honor, the second issue raised by Mr. Shamblin in his brief was sufficiency of the evidence. And it really is a fairly simple argument, and that is that there was absolutely no evidence that Mr. Shamblin had knowledge of the presence of a woman in that vehicle. The vehicle was stolen four days before. There's no evidence that he ever came into contact with that vehicle any day other than the day of his arrest, the 13th of December. Do we know what was there? The fact that the owner of the truck did not have a weapon and had no weapon in the truck, so you've got a four-day interval. Isn't that so? You have a four-day interval, Your Honor. That's correct. And then if there's a reasonable inference to be drawn, would the trier fact correctly draw it under the current state of the law? I think it depends on the facts that were presented to the trier fact and the sufficiency of them, and that is... No, I'm just asking you. There are certain... You have to infer on this record that the gun belonged to your client because nobody knows on this record who owned the gun. So somebody had to infer that your client owned it, and who makes that inference? Well, the ownership of the gun was established by a defense witness. Yes. How the gun got into the truck, of course, was never established. Yes. It was simply established that Mr. Shamblin, with a truck... And it was established where the gun was located. Correct. Correct. Because you couldn't put the top back on, so whoever was in the truck saw. Isn't that so? Not necessarily. The testimony from officers... It was where whoever got in the truck could see. Isn't that so? Well, Officer Polanco, as well as Officer Rodriguez, testified that there were many things in the back of the truck. Bags of clothing, other items, all of the items presented by the government in evidence were all in the back of the truck. Well, I'll ask you another way. Did the police have to search for the gun? Yes, they did. They had to remove the items and found the gun. But the gun wasn't concealed otherwise. Otherwise not concealed. That's what I'm suggesting. So the questions that you raise means that there was an inference made. And I'm asking you, who draws the inference? The jury, Your Honor. And what do we do when we get an inference drawn by the jury? How do we reverse it? Well, Your Honor, I think that if... We'd say it's not reasonable. That's the only way is to say it's not reasonable. And I would say it's not reasonable. Under all of the circumstances. And we consider all of the circumstances, don't we? Especially, Your Honor, the placement of where it was in the truck and any evidence of whether the defendant had knowledge that it was there, which is totally lacking. Thank you. Thank you, counsel. Good morning, Your Honors. May it please the Court, Assistant United States Attorney Wes Porter on behalf of the United States. So that when she comes to rebut state, will you please put in your view of the narrow issues that we must resolve on this appeal? Narrow issues in this appeal have to do with the factors that this Court has already touched upon having to do with the extrinsic evidence. The first being curative instruction given by the Court. Helen was asked the favorite case having to do with curative instructions. I have a favorite case that says, and that's Jeffries 114 F3D at 1491. That's my favorite case. I asked for your best case. It's my favorite because it's the best. In Jeffries, the Court said, and that was an en banc opinion, it said timely instruction usually cures prejudice unless highly prejudicial. The extrinsic evidence for the instruction itself was clearly inadequate. This is a case where the curative instruction in this case, this was not you have received extrinsic evidence, put that aside and decide the issue based on the evidence that was before your Court. This was, as Your Honor pointed out, there was no bail receipt in this case. The bail receipt has nothing to do with the defendant. It is irrelevant to the issues in this case. And more importantly than the actual instruction itself was the solicitation from the District Court, Judge Ezra, to the defense counsel in the case saying, what is the prejudice to your client? I'm going to give a curative instruction. Articulate for me the prejudice to your client so I can fashion that instruction to cure that prejudice. The best we've ever come up with, even to this point where I'm before Your Honors this morning, is in the brief, in the opening brief on page 24, there is a possibility that the jury may infer that there was some other crime committed by the defendant. A possibility that they can infer that some other crime was committed that would result in a bail received or a need for payments on a bail, on bail of crime. Now, if that's the case. They'd have to infer further than that, too. They'd have to infer that the bail receipt referred to the defendant. And I think that's one of the, one of the Jeffries factors is whether it's ambiguously phrased. In this case, it can't be a better example of whether something is ambiguously phrased as extrinsic evidence going back to the jury in their deliberations. It's not the bail receipt itself, mind you. It's the exhibit list and its reference to a bail receipt and a bogus date that is actually after the date of the trial. It doesn't refer to the defendant. It refers to this other date. It doesn't refer to a particular crime, which I think in Dixon and some of the other cases they talk about, he'd done something like this before. Where in the context of a murder and robbery case, that would be significant. It really is, in this case, about as ambiguously phrased as it can get. And when you couple that, I think the Jeffries court urges us to look at all of these factors and look at them together. When you couple how ambiguously phrased it is with the curative instruction given, that is the jury's brought back in a court and said there is no bail receipt in this case, there could not be any effect on the jury's verdict of guilty in this case. Some of the other issues that were brought up by appellant were whether the evidence is admissible or whether it's merely cumulative of other evidence. There's a discussion, and it's put in our brief, that we handled this in pretrial and emotion eliminating, that we talked about this bail receipt was listed on the government's exhibit list as Exhibit 15. We talked about the admissibility of this particular exhibit at trial. It did go to the jury. It was inadvertent, I think, on both sides. Absolutely. At least the record suggests it was inadvertent, but it did go, and the jury did have some questions. So the jury was aware of that. Absolutely.  The exhibit list. The only question is whether or not the curative instruction was sufficient to wipe it out. Isn't that so? The curative instruction is by far the strongest factor that favors us. But the issue that the cumulative issue does also tilt in favor of no reasonable possibility that this verdict was affected, and that is because not only is it a felon in possession case, so it's sort of the criminal history is taken out of the picture, but also the mere facts of this case that are set out in the brief, the fact that we're talking about someone driving a stolen vehicle, the fact that we're talking about numerous other items in the back of the vehicle that do not belong to him and, in fact, have the names of many other individuals in the back of the seat. There are inextricably intertwined events in this case, that it is clear that a reasonable juror could infer that there were other crimes that were taking place. The district judge actually went through great pains to give curative instructions throughout the trial several times about, you are to decide this issue based on the two counts that are before you, felon in possession of a firearm and ammunition, and not all the other things that he may have done, including stealing the car. Well, if the prejudicial illusion that could possibly be drawn based on the appellant's brief of this extrinsic evidence is, maybe he committed some crime in the past, maybe around that date of the arrest in this case, well, that's something that's already before the jury. That's something that they could have already done, and they already knew. So I think all of those factors strongly tilt in favor of no reasonable possibility that this verdict was affected. Without any further questions on that issue, the second issue having to do with the sufficiency of the evidence in this case, essentially the appellant's argument just goes to the knowing possession in this case, obviously, that being a felon was stipulated to at trial. And I'm not going to sit before your honors and say this was an overwhelming case or anything like that. It was a circumstantial case going towards the knowing possession, and we had to put on witnesses and put on evidence that worked towards those reasonable inferences to be drawn by a jury. And it had to do with finding the owner of the truck, calling the owner of the truck, talking about what was in there on December 9th, 2001, the year it was stolen, what wasn't in there on December 13th when the defendant was found driving the vehicle, the fact that we had a stipulation reached that talked about other items being in the car that did not belong to the defendant, that the firearm and ammunition did not belong to all those individuals that were named there, the position of the gun, as your honor pointed out, within arm's reach. It was actually in a card jack compartment of the truck, and when placed in there, there's a picture in the record, it doesn't close and it's visible and within arm's reach. There was evidence put in there. Can you explain that a little bit with a card jack? What do you mean by that? This model truck, your honor, has two compartments in the rear seat. It's not actual, it's sort of like an extended cab truck, and the seats actually flip up. And there are two compartments, probably about the size of an eight and a half by 11 piece of paper, that when opened up have the jack and things that you would use to replace the tire if you got a flat and things of that nature. So they're actually factory issued. And so they're filled up and a cover goes over them. So when you place something like a gun or anything else in that compartment, the cover of it sticks up. And that's the evidence. That's where the gun was. That's where the gun was, on the driver's side in that rear compartment. And in the light most favorable to the government, looking at that evidence and the reasonable, and as I've argued, the obvious inferences that they had to make, the jury had to make, that that was not insufficient in this case, I should refer, unless there's any questions for me. Thank you, counsel. Thank you, your honor. I think you used all your time, but we'll give you a minute for rebuttal if you'd like it. Thank you. I appreciate that. I'll be very brief. I'll just address three matters. I do not believe that it can be argued that the wording on the exhibit list was ambiguously phrased. It said it was a bail receipt dated December 11th. There was testimony that a payment was made for Mr. Shamblin on that date. There can be no doubt that the connection would have been drawn that a bail payment was made for James Shamblin on that date. So it certainly was not ambiguously phrased. I think the prejudice is evident when information about Mr. Shamblin being on bail for criminal offense on that date got to the jury. And as to the curative instruction, I would again quote Lewis. It is extremely difficult for jurors to ignore prior convictions when determining guilt. The fact that he was on bail and had been arrested for a criminal offense, I believe rises to that level. Therefore, the curative instruction could really not be effective. Thank you. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar for argument is Starr v. Warden. Thank you.
judges: Silverman, W. Fletcher, Rawlinson